Brinkerhoff, J.
The only part of the act “ to give additional ■security to land titles in this state,” which has any application to this case, is the second section, which is as follows:
“Seo. 2. That no action of ejectment or other action for the recovery of lands or tenements, shall be brought against any person claiming under or by virtue of any judicial sale, or any salo of forfeited or other lands for taxes except within seven years after open and notorious possession taken and continued by the defendant or the person or persons under whom he may or shall claim. And every sale of lands or tenements under any judgment, decree, or order of a court of competent jurisdiction, whether made by a sheriff, coroner, marshal, executor, administrator, or master in chancery, •shall be deemed a judicial sale within the meaning of this act. But all persons, whose right of action shall or may have occurred before the passage of this act, shall be at liberty to bring their actions at any time within five years after the passage of this act, although the term of seven years hereinbefore limited may have previously expired.
“And if any person shall be an infant, or feme covert, or insane, ' or imprisoned at the time of the adverse entry, he or she shall be entitled to bring his or her action any time within five years after his or her disability shall have been removed: provided, ^that nothing herein contained shall, in any case, be construed to extend the time for bringing any action for the recovery of lands or tenements beyond the period limited in the second section of the act for the limitation of actions, passed February 18, 1831.”
Neither the plaintiff, nor those under whom he claims, having been made parties to the proceeding for the foreclosure and sale of the premises in question, it is clear that the plaintiff is not estopped by that decree from claiming a right to redeem; and the only question made before us is that which arises on the demurrer; that is to say, whether the plaintiff’s claim is barred by the provisions of the second section of the act of 1849.
It is contended in behalf of the plaintiff:
1. That the statute in terms applies only to actions at law, and that this proceeding, being in the nature of a bill in equity, and for *83 the enforcement of an equitable right, is, therefore, not affected by the statute.
Upon this proposition it is not necessary to linger; as it is too well settled.to require discussion, that except in a few exceptional cases, among which the one before us is not included, the bar of a statute of limitations is as available in equity as at law.
2. The plaintiff further contends, that Zalmon B. Wakeman, under whom' he claims, not having been a party to the decree of foreclosure and sale under which the defendant holds possession of the premises sought to be redeemed, the sale was not such a “judicial sale” as, by a just and proper construction of the act, is contemplated by its provisions.
And here is the decisive question in the case. What was the intention of the legislature in the enactment of this second section ? Was it intended that “open and notorious possession” under a judicial sale, should be an absolute bar as against all the world, except femes covert, infants, and persons imprisoned and insane? or as against those only who were parties, or stand in the relation of privies to those who were parties, to the judicial proceeding under which the sale was made ?
That it was competent for the legislature to provide that an adverse occupancy of seven years, or even of any shorter term, ^should operate as an absolute bar against all the world, will not be denied. North Carolina and South Carolina have prescribed the period of seven years as the general limitation within which actions for the recovery of real estate shall be brought; and Kentucky has fixed the same limit as to all claims arising out of conflicting entries and surveys. The legislative competency being undisputed, we come back to the question of legislative intention. And in the consideration of this question, we must look primarily to the language of the act to be construed.
Now, an examination of the language of the second section will, we think, satisfy any intelligent reader that had it been the express intention of the legislature to render j>ossession under a judicial sale an absolute bar as against all the world except the persons whoso rights are specially saved, it could not well have employed language more expressive of that intent. And such undoubtedly is its natural, usual, and literal signification. “ No action, etc., shall be brought against any person claiming under, and by virtue of any judicial sale, etc., except within seven years,” etc. And it is *84 equally clear that it can not be made on its face to express what the plaintiff claims its meaning to be, without interpolating within it, in addition to the saving clause in favor of insane and imprisoned persons, femes covert, and infants, another clause saving the claims of persons not parties to the “judicial proceeding” under-which the sale should be made. To justify us in making, by force of judicial construction merely, so extensive an interpolation, there would, it seems to us, be required stronger reasons than any which can be found in the present case.
From an inspection of this section, it is evident that it was drawn with no little care and caution. It saves for five years the claims of those who otherwise would be barred and surprised by its immediate operations ; it saves the rights of minors, married women, and persons imprisoned or of unsound mind; and it provides against the extension, by construction, of the limit fixed by the general act of limitations for cases in respect to real estate not coming within tho purview of this section. And the obvious care with which these provisions and exceptions were *made, affords a strong rational, as well as legal, presumption that other exceptions, not expressed, were intentionally excluded.
On the face of the section there is no absurdity which might imperiously require a construction giving it a meaning different from its literal import; and the only argument by which we are urged to do so, is derived from supposed cases of hardship which might arise under its operation if literally construed. That such cases of hardship might possibly occur, is readily admitted. But the same may be said of the operation of all statutes of limitation. It is in the nature of all such statutes that it should be so. And they all proceed upon the policy of compelling either a vigilant and timely prosecution of the rights of parties, or the sacrifice of those rights to the public repose. Where statutes of limitation are on their face free from ambiguity, it is now the established policy of courts to avoid giving them any other construction than that which their words demand. Angelí on Limitation, 24.
And, on the whole, looking at, the examples of like legislation to be found in other states, we are not prepared to say but that the general assembly in the enactment of this statute, appreciating the advantages of public repose and the evils of insecurity of land titles, may have intended to express all it has expressed, notwith *85 standing the cases of individual hardship to which its operation might possibly give rise.
But, it is said, neither the plaintiff nor those under whom he claims have had their day in court, and therefore he ought not to be barred. This would be a valid objection if the defendant were setting- up the decree as an estoppel; but as against a plea of this statute, it can not avail; for the objection would lie equally against all pleas of any statute of limitation, and effectually prevent its operation.
Finally, it is contended for the plaintiff that the purchaser at the judicial sale took by his purchase nothing more than the title of the mortgagor; and that, as the plaintiff’s mediate grantor was, at the time of the sale, as the owner of an undivided fourth part of the whole mortgaged premises, a tenant in common with the mortgagor, the purchaser of the interest and title of the mortgagor was *in like manner a tenant in common with the plaintiff and those under whom he claims; and that, therefore, the possession •of the defendant could not be an adverse possession.
It seems to us, however, that the purchaser at the judicial sale took something more than the title of the mortgagor; that he became invested, by operation of law, with the title of the mortgagee, as well as, by purchase, with that of the mortgagor; that he was’thus placed in the condition of a mortgagee in possession, after condition broken, and entitled to claim all the advantages of that position. And that the holding of a mortgagee in possession is a holding adverse to the claim of a purchaser from the mortgagor subject to the mortgage, seems to us clear.
Demurrer overruled, and cause remanded for further proceedings.
Bartlex, C. J., and Swan, Bowen, and Scott, JJ., concurred.